# Jett v. Brooksville & Ohio River Railroad Company.

(Decided December 18, 1925.)

## Appeal from Bracken Circuit Court.

1. Corporations—Rule Requiring Clear and Convincing Evidence of Fraud or Mistake to Cancel Instrument Held Not Applicable in Action to Enforce Stock Subscription Contract.—Where all parties agree that defendant signed stock subscription on condition that it be later amended to embody certain conditions, only issue being whether change made corresponded to agreement, rule requiring clear and convincing evidence of fraud or mistake to cancel written instrument did not apply.

2. Corporations—Subscriber to Stock, to be Relieved on Ground of Fraud or Mistake in Subscription, Must Exercise Diligence.—Subscriber to stock has obligations to corporation and to other subscribers whose subscriptions might have been procured by reason of his subscription, and, in order to be relieved on ground of fraud or mistake in subscription paper, he must exercise diligence in its discovery and in asking for rescission, even when creditors' rights are not involved.

3. Corporations—Subscriber Held Not Entitled to Reduce Subscription Because of Failure to Insert Agreed Conditions Therein.—That all conditions actually written in stock subscription paper were fully met, and that there were more than sufficient subscriptions exclusive of defendant's held not to entitle defendant to reduce subscription because of failure to insert agreed conditions therein.

4. Corporations—Subscription Contract Held Not Affected by Subscriber's Statement at Organization Meeting that he would Take Only One-half of His Subscription.—Unless all subscribers were present at organization meeting and agreed to release defendant's subscription, his contract was not affected by failure of subscribers present to object to his statement that he would take only one-half of his subscription.

5. Corporations—Subscriber Held Not Entitled to Question Validity of Subscription After Corporation Purchased Property, and Nearly Two Months After Articles were Signed.—Subscriber named in charter of corporation, organized to purchase railroad, as one of stockholders to conduct affairs until election of officers, who at least tacitly approved negotiations culminating in purchase, held not entitled to question validity of subscription after purchase was consummated, and nearly two months after articles of incorporation were signed.

B. S. GRANNIS for appellant.

M. HARGETT for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The Brooksville & Ohio River Railroad Company sued Garrett Jett for the sum of $2,000.00 on an unpaid subscription to its capital stock, the subscription paper being in these words:

> "We, the undersigned firms, corporations and individuals, subscribe the amount opposite our names toward a stock company to be hereinafter organized for the purpose of purchasing the Brooksville Railroad Company, and agree to pay same when called for, contingent upon ($30,000.00) thirty thousand dollars *bona fide* subscriptions being received, and provided same is sold by order of court."

The defense is that defendant signed the subscription paper on condition that it should later be amended to embody certain language then agreed on by him and the promoters; that by fraud or mistake of the promoters it was amended so as to include only a part of the agreed conditions and that he was thereby released. A judgment was rendered for plaintiff and defendant appeals.

Plaintiff is the only railroad out of Brooksville. Prior to the date of this transaction it had become much involved and was not earning anything. Foreclosure suits had been filed in the circuit court and there was apprehension of its dissolution. The citizens of Brooksville selected W. H. Stevenson, H. L. Corliss and John Kerns as a committee to procure subscriptions to a proposed corporation to be organized for the purpose of purchasing that road. Mr. Jett, as one of the wealthiest men in the town, was the third to be called upon. He objected to the terms of the subscription and suggested certain additions thereto. The committee agreed that if he would sign the paper in its then form that they would take it back and write the amendment he suggested in the agreement above the signatures. Thereupon Jett subscribed for $2,000.00 in stock. The parties carried the paper back to the bank and wrote in it certain words that were what was deemed a compliance with Jett's suggestion and continued to solicit subscriptions to the same paper, securing about $36,000.00 *bona fide* subscriptions.

The articles of incorporation were acknowledged on the 30th day of June, 1919, Jett not being present; it

being provided therein that the affairs of the corporation should be conducted by certain of the stockholders until the election of officers by the stockholders, Jett being among one of those so selected.

In the meantime the suits against the old company progressed, and pursuant to an agreement reached therein an order was entered on the 22nd of August, 1919, approving the sale of all the property of the old company, including all its rights and franchises, to the new company for the sum of $20,000.00. Shortly afterwards a meeting of the stockholders of the new company was held for the purpose of organization.

The meeting was attended by a large majority of the stockholders, including two of the promotion committee. Jett was present and announced that his subscription was conditioned upon the property of the old company being sold at public auction at the courthouse door; that this had not been done and he would not pay his subscription, though he was willing to do as much as any other man was doing and would take stock for $1,000. No response was made to this suggestion and the organization was perfected, Jett being elected vice-president of the company and qualifying as such. Later he offered to pay an assessment of $1,000.00 but declined to recognize the $2,000.00 subscription.

He testifies that his views were known to Stevenson before he was called upon for a subscription; that the subscription paper was presented to him at his warehouse and he declined to sign it. He was then asked his objection and responded that "if they would write in the terms of subscription that it was not to be binding until $30,000.00 of *bona fide* subscriptions were taken and that it should be sold to the highest bidder at the courthouse door" he would sign for $2,000.00, otherwise he would not. The parties agreed to this. Mr. Stevenson had a paper already drawn embodying these provisions, but it was desired that he sign the paper signed by the other subscribers and it was agreed for him to do this and that the parties would take it back to the bank and write in the additional terms. He is corroborated by Mr. Stevenson, who says that upon the committee's return to the bank they were unable to insert the entire notation agreed on and that he and Mr. Corliss changed the phraseology of the proposed amendment and inserted words which they thought embodied its meaning. That the words agreed to be inserted were: "Provided same

is sold by order of court to the highest bidder and provided that not less than $30,000.00 *bona fide* subscriptions be received," the inserted words being "contingent upon $30,000.00 *bona fide* subscription being received and provided same is sold by order of court."

Mr. Corliss testifies that the words inserted were those agreed upon by the parties; that they were written by Mr. Stevenson with a lead pencil on a sheet of paper, read to Mr. Jett and approved by him, and that paper was carried back by them and copied verbatim in the subscription paper.

Mr. Kerns corroborates Corliss though he is not so positive as to details. The duplicate paper which Mr. Stevenson had typed beforehand was destroyed. As all the parties agree that the original subscription paper was to be changed and was changed after being signed and in the absence of Jett, the rule requiring clear and convincing evidence of fraud or mistake to cancel a written instrument on that ground does not apply. A difficult question of fact is thus presented, but if we accept appellant's version, and further assume that it was such a material alteration of the conditions upon which he signed as to constitute a defense, it remains to be determined whether he is estopped to rely upon it. A subscriber to the stock of a proposed corporation, even when creditors' rights are not involved, occupies a dual attitude, with obligations to both the corporation and to the other subscribers, whose subscriptions may have been procured by reason of his subscription, and to be relieved on the ground of fraud or mistake in the execution of the subscription paper must exercise diligence in its discovery and in asking for rescission.

Appellant insists that (1) neither the corporation nor its subscribers can complain because all the conditions actually set out in the writing have been fully met, as there are more than $30,000.00 *bona fide* subscriptions exclusive of that of appellant, and the property was sold by an order of court as provided in the articles of subscription as amended. (2) That he did not learn of the failure of the promoters to properly insert the agreed conditions in the subscription papers until just before the meeting for organization, and this was the first opportunity afforded him to question the correctness of his subscription; that he informed those present at that meeting that he would not be bound thereon and no one objected to his withdrawing, and that his verbal state-

ment that he would sign for $1,000.00 was received without objection; therefore the principle of estoppel does not apply.

The trouble with the first proposition is that it does not take into consideration the effect that may have been produced upon the minds of the other subscribers who relied upon his business judgment and may have considered the size of his subscription as indicating his faith in the enterprise and thus have been induced to subscribe, and unless all of the subscribers were present at the stockholders' meeting and agreed to release his subscription the contract was not affected by the action of the stockholders.

2nd. It does not appear when the subscription paper was signed, but the articles of incorporation were signed on the 19th of June. Not only did Jett make no objection at that time but he was named in the charter as one of the stockholders who were to conduct the affairs of the corporation until the election of officers. Acting under this authority the negotiations were conducted by those stockholders and the purchase of the property effected. It does not appear that Jett acted with the others, but he was giving his tacit approval to their action and raised no question as to the validity of his subscription until after the purchase had been consummated nearly two months after the articles of incorporation were signed, all of which had been done on the faith of his subscription. It was then too late for him to question the validity of his subscription.

Wherefore, perceiving no error, judgment is affirmed.